IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | | |
|---|---|---|
| BARTLETT GRAIN COMPANY, L.P., | ) | |
| Plaintiff, | ) ) ) | |
| vs. | ) ) | Case No. 11-0509-CV-W-ODS |
| AMERICAN INTERNATIONAL GROUP, et al., | ) ) ) ) | |
| Defendants. | ) | |

## ORDER SUPPLEMENTING PRIOR ORDER DENYING MOTION FOR PRELIMINARY INJUNCTION

In a prior Order, the Court denied Plaintiff Bartlett Grain Company, L.P.'s motion to preliminarily enjoin Defendant Chartis Insurance UK Limited from proceeding with arbitration. The Court also denied Chartis' motion to dismiss to the extent the motion was based on the lack of personal jurisdiction. The Court provides the following reasons for its decisions.

### I. BACKGROUND

Bartlett Grain, a company in Kansas City, Missouri, is the insured under a trade credit insurance policy. Chartis, of London, England, is one of the insurers. After Bartlett Grain filed this action, Chartis commenced arbitration in London. Bartlett Grains seeks to preliminarily enjoin Chartis from proceeding with arbitration.

The policy contains a clause requiring arbitration in London of disputes arising out of or relating to the contract.[1] But the policy also contains a clause captioned "Choice of Law & Jurisdiction" which states, "The proper and exclusive law of this

---

[1] The parties are to first consider settlement through non-binding mediation before arbitrating the dispute.

Insurance shall be England & Wales law.  *Any disputes arising under or in connection with it shall be subject exclusively to a court of competent jurisdiction within the United States*" (emphasis added).  The parties agree the italicized sentence is a forum selection clause, but they disagree what bearing it has – if any – on the arbitration clause.

Bartlett Grain argues the forum selection clause is irreconcilable with the arbitration clause and that the latter should be construed against Chartis to the effect that arbitration is not required.  Chartis counters the forum selection clause can be reconciled with the arbitration clause by construing the former as "appl[ying] to suits which fall outside the arbitration clause, for example enforcement provision based on the award."  Chartis also moves to dismiss Bartlett Grain's action in part due to lack of personal jurisdiction.

## II.  DISCUSSION

### *(1) Personal Jurisdiction*

Before reaching the merits of Bartlett Grain's motion, the Court must first decide whether it has personal jurisdiction over Chartis.  *See Land-O-Nod Co. v. Bassett Furniture Industries, Inc.*, 708 F.2d 1338, 1340 (8th Cir. 1983).  A court has personal jurisdiction over a nonresident defendant if the forum state's long-arm statute is met and the exercise of personal jurisdiction over the defendant does not violate due process.  *See Digi-Tel Holdings, Inc. v. Proteq Telecommunications (PTE), Ltd.*, 89 F.3d 519, 522 (8th Cir. 1996).  Because the Missouri long-arm statute authorizes the exercise of jurisdiction over nonresidents to the extent permissible under the due process clause, the Court can turn immediately to the question whether the assertion of personal jurisdiction would violate due process.  *Romak USA, Inc. v. Rich*, 384 F.3d 979, 984 (8th Cir. 2004); *see Federal Deposit Ins. Corp. v. Malmo*, 939 F.2d 535, 537 (8th Cir. 1991) (holding that court need not discuss whether defendant engaged in conduct within ambit of Missouri long-arm statute).

"Due process is satisfied when a defendant consents to personal jurisdiction by entering into a contract that contains a valid forum selection clause." *Dominium Austin Partners, L.L.C. v. Emerson*, 248 F.3d 720, 726 (8th Cir. 2001). Chartis does not argue the policy's forum selection clause – subjecting disputes to United States "court[s] of competent jurisdiction" – is invalid; rather, Chartis asserts – without any argument or authority – that this Court is not a "court of competent jurisdiction" because personal jurisdiction is lacking.

In the United States, "competent jurisdiction" usually refers to subject matter jurisdiction, not personal jurisdiction. *See U.S. v. Morton*, 467 U.S. 822, 828 (1984). Although the insurance policy is governed by the law of England and Wales, Chartis has cited no case suggesting a different meaning of "competent jurisdiction" under that law, and the Court could find none. Even if the Court found the term "competent jurisdiction" to be ambiguous, Chartis has provided no extrinsic evidence suggesting the parties intended a meaning other than the usual one. And any ambiguity would be construed against Chartis, not Bartlett Grain. *See Waterfront Shipping Co Ltd v Trafigura AG (The Sabrewing)*, 1 Lloyd's Rep. 286 (Q.B. 2007).[2] Chartis consented to personal jurisdiction in Missouri by entering into a contract containing a valid, applicable forum selection clause.

The five factors the Court considers in evaluating whether personal jurisdiction exists also undermine Chartis' contention. *See Romak USA*, 384 F.3d at 984. Chartis agreed to insure Bartlett Grain, a company in the Western District of Missouri, beginning in November 2007. Bartlett Grain has submitted evidence that it accepted the original insurance policy in this district, meaning the contract was formed here. *See Gangwere v. Bischoff*, 935 S.W.2d 783, 785 (Mo. Ct. App. 1996). The risk of loss Chartis insured was in Missouri. Bartlett Grain mailed its premium payments from Missouri; these payments ultimately were accepted by Chartis. Chartis' contractual promises to Bartlett Grain created obligations that would impact commerce in Missouri. And Chartis (with

---

[2] Chartis contends it did not draft the policy, but it was an insurer under the policy and it ratified the policy as written by agreeing to it. To hold otherwise would be to construe the ambiguity against Bartlett Grain.

the other insurers) appointed a loss adjuster who audited Bartlett Grain's claim at Bartlett Grain's headquarters in Kansas City. There was a sufficient connection between the insurance policy and Missouri for Chartis to be sued here. *See McGee v. International Life Ins. Co.*, 355 U.S. 220, 223-24 (1957) (holding California court had personal jurisdiction over Texas insurer in part because life insurance contract was delivered in California, premiums were mailed from there, and insured was resident of California when he died).

In addition, Missouri has a significant interest in providing an effective remedy for its residents harmed by out-of-state insurance companies. And whatever inconvenience Chartis might experience by being subject to this forum is no greater than the inconvenience Bartlett Grain would experience in London. Most likely, the bulk of the evidence relating to Bartlett Grain's claim exists in this district, not in London. The Court perceives no unfairness in exercising jurisdiction over Chartis, and Chartis has not identified any.

The Court holds Chartis is subject to personal jurisdiction in Missouri. Venue is appropriate in this district. *See* 28 U.S.C. § 1391(c).

*(2) Preliminary Injunction*

The Court evaluates Bartlett Grain's motion using the four factors stated in *Dataphase Systems, Inc. v. C L Systems Inc.*, 640 F.2d 109, 114 (8th Cir. 1981). In arguing Bartlett Grain has not shown a probability of success on the merits, Chartis cites two English cases involving forum clauses in conflict with arbitration clauses.[3]

In *Paul Smith Ltd. v. H & S International Holdings*, 2 Lloyd's Rep. 127 (Q.B. 1991), the contract contained a clause requiring arbitration and the following clause:

> 14. LANGUAGE AND LAW  This agreement is written in the

---

[3] The Court notes Bartlett Grain's objection to Chartis' untimely opposition to Bartlett Grain's motion. Bartlett Grain has not shown it was prejudiced by the late filing, and the Court denies Bartlett Grain's request to disregard it.

4

English language and shall be interpreted according to English law.

The Courts of England shall have exclusive jurisdiction over it to which jurisdiction the parties hereby submit.

The court rejected the plaintiffs' argument the clauses were "hopelessly inconsistent," construing the second clause as merely "specif[ying] . . . the law governing the arbitration." *Id.* at 129.[4]

In *Shell International Petroleum Co. Limited v Coral Oil Co Limited*, 1 Lloyds Law Reports 72, 75 (Q.B. 1998), the contract contained a mandatory arbitration clause and the following clause headed "'Applicable law'": "This Agreement, its interpretation and the relationship of the parties hereto shall be governed and construed in accordance with English Law and *any dispute under this provision shall be referred to the jurisdiction of the English Courts*" (emphasis added). The court rejected the defendant's argument the clauses were "wholly incompatible." *Id.* The court held the first part of the "'Applicable law'" clause was an "express choice of proper law," while the italicized text "requir[ed] any dispute about the proper law to be referred to the English Courts and all other substantive disputes to be referred to arbitration." *Id.* at 76.

Bartlett Grain argues these cases are distinguishable because the captions of the forum clauses did not include the word "Jurisdiction" like the caption in the insurance policy ("Choice of Law & Jurisdiction"). While the Court does not find Bartlett Grain's distinctions significant, the Court readily perceives that *Paul Smith*'s and *Shell*'s language constructions are unworkable with the Bartlett Grain/Chartis policy.

Chartis asserts *Paul Smith* is "directly on point" but fails to acknowledge that – if that decision's construction is used in this case – then *United States* law governs the arbitration in London, which Chartis elsewhere submits is governed by the English Arbitration Act. For *Shell*, that decision's construction would designate *United States*

---

[4] The court admitted the language was "not felicitous," but found "[t]his incongruity pales into insignificance . . . when compared to . . . treating the arbitration clause in a non-domestic commercial agreement as pro non scripto [as not written]." *Paul Smith*, 2 Lloyd's Rep. at 130.

courts with exclusive jurisdiction to decide disputes about the proper law of the contract (English and Welsh law), which Chartis elsewhere insists is best left to English lawyers and arbitrators. The Court has no reason to believe these unusual outcomes are what the parties expected or intended.

Bartlett Grain argues the arbitration clause in its insurance policy is ambiguous when read in light of the forum selection clause and that the Court should apply the rule of *contra proferentem*, or construction against the drafter (see Black's Law Dictionary (9th ed. 2009)). But under English law, "[t]he *contra proferentem* rule is only invoked *as a last resort*" (emphasis added) if "the meaning of the words is so finely balanced" that the rule's application is warranted. *Waterfront Shipping Co Ltd*, 1 Lloyd's Rep. 286. And as *Paul Smith* and *Shell* reflect, "English courts generally seek to resolve even the most severe ambiguities in arbitration agreements in order to give effect to the intent to arbitrate." Laura M. Murray, *Domestic Court Implementation of Coordinative Treaties: Formulating Rules for Determining the Seat of Arbitration under the Convention on the Recognition and Enforcement of Foreign Arbitral Awards*, 41 Va. J. Int'l L. 859, 896 (2001) (citations omitted).

Contrary to Bartlett Grain's argument, the forum selection clause in the policy can be reconciled with the arbitration clause, giving both effect. The forum selection clause states that disputes arising under the policy are subject to the exclusive jurisdiction of United States courts. The Court interprets this to mean that, if a court becomes involved in a dispute arising under the policy, it must be a United States court. The Court construes "exclusive jurisdiction" to only exclude other countries' courts, not non-court tribunals. As construed, the clause does not foreclose the possibility of non-court (*e.g.*, arbitral) jurisdiction over disputes arising under the policy, meaning the provisions for arbitration and court jurisdiction are compatible.

The extrinsic evidence also supports this conclusion.[5] Chartis submitted copies

---

[5] Because *contra proferentem* is a rule of last resort, the Court looks to extrinsic evidence as proof of intent before applying the rule. *Cf. AgGrow Oils, L.L.C. v. National Union Fire Ins. Co. of Pittsburgh*, 242 F.3d 777, 781 (8th Cir. 2001) (considering extrinsic evidence as proof of intent after holding inconsistent contract provisions

of September 2007 emails showing that William Webster, Bartlett Grain's Vice President, proposed various changes to a form policy of insurance which contained the arbitration clause. This indicates Webster closely read the form policy and was aware of its details, and, notably, Webster suggested no changes to the arbitration clause. In an email dated September 18, 2007, Webster stated Bartlett Grain "accept[ed]" the proposal (which included "the policy form") and that he understood "the finalized policy form [would] be forthcoming." Only the finalized policy contains the forum selection clause.

In an affidavit, Webster claims he understood "[f]rom the onset" that all disputes would be tried in a United States court. But Webster gives no indication what he understood the arbitration clause to mean; his affidavit suggests he believed it meant nothing at all, which is not a reasonable interpretation. William Fellows, Bartlett Grain's President, states in an affidavit that Bartlett Grain would not have entered into the policy if arbitration was required. But that is exactly what Bartlett Grain did: it accepted the proposal with *no mention* of United States courts and not until the finalized policy – *after* acceptance – did the forum selection clause appear. The evidence demonstrates Bartlett Grain was aware of and fully agreed to the arbitration clause.

Because Bartlett Grain agreed to the arbitration clause, it cannot show irreparable harm caused by the arbitration proceedings, nor can it show a probability of success on the merits of its motion. Despite Bartlett Grain's fear that the arbitration will be unfair, the public interest is served by holding Bartlett Grain to its agreement to arbitrate.[6] Bartlett Grain's motion for a preliminary injunction is denied. Consistent with the policy, the Court retains jurisdiction over this case for the purpose of reviewing and enforcing any arbitration award.

---

rendered ambiguous issue of arbitrability).

[6] The Court has no reason to suspect Bartlett Grain will be treated unfairly by the arbitrators.

## III. CONCLUSION

Chartis' motion to dismiss to the extent based on lack of personal jurisdiction is denied. Venue is proper in this district. Bartlett Grain's motion for a preliminary injunction is denied. The Court retains jurisdiction for post-arbitration proceedings.
IT IS SO ORDERED.

DATE: July 29, 2011

/s/ Ortrie D. Smith
ORTRIE D. SMITH, SENIOR JUDGE
UNITED STATES DISTRICT COURT