IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | | |
|---|---|---|
| BARTLETT GRAIN COMPANY, L.P., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. 11-0509-CV-W-ODS |
| | ) | |
| AMERICAN INTERNATIONAL GROUP, | ) | |
| et al., | ) | |
| | ) | |
| Defendants. | ) | |

**ORDER AND OPINION DENYING (1) PLAINTIFF'S MOTION FOR LEAVE TO FILE
SURREPLY AND (2) DEFENDANT MILLER INSURANCE SERVICES, LTD.'S
MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION**

Pending is Miller Insurance Services, Ltd.'s ("Miller") Motion to Dismiss for lack of jurisdiction.  Also pending is Plaintiff's Motion for Leave to File Surreply.  Both motions (Doc. # 33 and Doc. # 64) are denied.

I.  BACKGROUND

Plaintiff is a Missouri Limited Partnership with its principal place of business in Kansas City, Missouri.  Miller is incorporated under the laws of England and Wales, has its principal place of business in London, England, and is engaged in the business of brokering insurance and reinsurance contracts.  Plaintiff's business involves selling grain to customers, who often require provision of trade credit to obtain the grain.

Plaintiff also purchases insurance to protect against the risk that the trade credit will not be repaid.  It would retain a broker to obtain the insurance, and one of the brokers it utilized was Hays Companies ("Hays").  Plaintiff – through William Webster (the Vice President of Plaintiff's general partner) – often dealt with Hays Companies ("Hays"); more specifically, Webster dealt with Kevin Cummings, who worked out of Hays' office in Kansas City, Missouri.  In mid-2007, Webster and Cummings discussed "the London trade credit insurance market;" Hays did not broker business in London, but

as a result of this conversation Cummings arranged for Webster to discuss the matter with Miller (through its representative, Andrew Perry).  According to Webster, a conference call took place between himself, Perry, Cummings, and another Hays representative in July 2007.  Webster Affidavit, ¶ 4.  Later that month, an agreement was reached whereby Miller acted as Plaintiff's agent for the purpose of obtaining trade credit insurance in London.  Through Miller's efforts, a policy was procured in 2008, and renewed in 2009 and 2010.  During this time period, Miller – acting on Plaintiff's behalf and at Plaintiff's direction – negotiated and arranged for several endorsements and amendments.

In 2008, Plaintiff entered a credit agreement with several buyers whereby Plaintiff extended $17 million of trade credit, resulting in Plaintiff's delivery of grain to those entities.  This credit extension was covered by the insurance agreements arranged by Miller.  In the Spring of 2009, the buyers advised Plaintiff that they might lack the ability to continue operating, thus undermining their ability to repay the credit.  Concerned that a default would occur if a capital infusion was not made, Plaintiff agreed to loan the buyers $6 million.  However, Webster first contacted Perry and explained Plaintiff would fund the supplemental loan "only upon obtaining the underwriters['] agreement that in the event of [the buyers'] default, the Loan would have priority in any payment or application of collateral."  Webster Affidavit, ¶ 24.  Plaintiff alleges Miller negotiated such an agreement from the underwriters on Plaintiff's behalf, but that Miller never reduced the agreement to writing.  In its Amended Complaint, Plaintiff alleges Miller breached its fiduciary duty (Count III), was negligent (Count IV), or breached its contract with Plaintiff (Count V).

The parties generally agree that throughout their relationship there have been numerous communications via mail, e-mail, and telephone.  Some of these communications were between Miller and Plaintiff, while others were between Miller, Hays, and Plaintiff.  Presently, it appears all such communications involving Hays were sent to someone at its Kansas City, Missouri, office.  Many communications were initiated by Miller and directed to Plaintiff.  All documentation and paperwork was

transmitted between Plaintiff and Miller. Miller's fees were paid by Plaintiff.[1] Perry also came to Kansas City twice in connection with its business on behalf of Plaintiff: once in August 2008 and again in March 2010.

## II. DISCUSSION

### A. Surreply

In its Reply Suggestions, Miller cited the District Court's opinion in <u>K-V Pharmaceutical Co. v. J. Uriach & CIA, S.A.</u>, 743 F. Supp. 2d 1073 (E.D. Mo. 2010), to support its proposition that "a business relationship, standing alone, does not confer jurisdiction." Reply Suggestions at 3. This was not a new argument; the argument was presented in Miller's initial suggestions, but <u>K.V. Pharmaceutical</u> was not cited originally. After the Reply Suggestions were filed, the Eighth Circuit reversed the decision in <u>K.V. Pharmaceutical</u>. Plaintiff wishes to file a Surreply to address this fact, and Miller opposes this request.

The Court does not deem a Surreply necessary. The argument was presented, albeit with different authority, in the initial suggestions; Plaintiff had ample opportunity to address the argument. Moreover, the Court does not view the matter as one justifying lengthy additional discussion. It is sufficient to note that the Court is aware of the Eighth

---

[1]For these reasons, Perry's claim that he regarded Hays and not Plaintiff as Miller's client/contract partner (<u>see</u> Perry Affidavit, ¶ 27) is difficult to believe. It seems clear that all decisions were made by Plaintiff, that there were occasions where Plaintiff contacted Miller directly but appear to be none where Hays contacted Miller to arrange something for Plaintiff, and that Plaintiff was intimately involved in all discussions involving its insurance whereas Hays was not. Most importantly, the object of this relationship involved procuring insurance for Plaintiff; Hays was not involved in this process (as it did not do business in London), nor is there any indication that Hays was financially compensated, much less involved, in these transactions. Ultimately, this matter is probably of little importance: the issue is Miller's contact with the forum in connection with the business transacted, not necessarily the identity of its customer.

Circuit's decision and the Court believes it can apply the case without requiring the expenditure of time and resources on additional briefing.

## B.  Personal Jurisdiction

"While it is true that the plaintiff bears the ultimate burden of proof . . . jurisdiction need not be proved by a preponderance of the evidence until trial or until the court holds an evidentiary hearing."  Dakota Indus. v. Dakota Sportswear, Inc., 946 F.2d 1384, 1387 (8th Cir. 1991).  In this case, the Court has elected to decide the issue without holding an evidentiary hearing.  "If the district court does not hold a hearing and instead relies on pleadings and affidavits . . . the court must look at the facts in the light most favorable to the nonmoving party and resolve all factual disputes in favor of that party."  Id. (citations omitted).

There are two broad categories of personal jurisdiction.  "Specific jurisdiction refers to jurisdiction over causes of action that 'arise out of' or 'relate to' a defendant's activities within a state."  Lakin v. Prudential Securities, Inc., 348 F.3d 704, 707 (8th Cir. 2003) (citing Burger King Corp. v. Rudzewicz, 471 U.S. 462, 472 (1985)).  "General jurisdiction, on the other hand, refers to the power of a state to adjudicate any cause of action involving a particular defendant, regardless of where the cause of action arose."  Id. (quotation omitted).  The issue in this case is whether Miller is subject to specific jurisdiction; there is no need to discuss general jurisdiction further.

Specific jurisdiction is proper "if the injury giving rise to the lawsuit occurred within or had some connection to the forum state, meaning that the defendant purposely directed its activities at the forum state and the claim arose out of or relates to those activities."  Steinbuch v. Cutler, 518 F.3d 580, 586 (8th Cir. 2008) (citing Burger King Corp., 471 U.S. at 472)).  The Constitutional analysis[2] requires the Court to consider

---

[2]Missouri's long-arm statute "'authorizes the exercise of jurisdiction over non-residents to the extent permissible under the due process clause, [so] we turn immediately to the question whether the assertion of personal jurisdiction would violate the due process clause.'"  Romak USA, Inc. v. Rich, 384 F.3d 979, 984 (8th Cir. 2004)

> [t]he nonresident defendant's conduct and connection with the forum state [and whether it] should reasonably anticipate being haled into court there, and it is essential that there be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws. Purposeful availment means that the defendant's contacts with the forum state must not be random, fortuitous, attenuated, or the result of unilateral activity of a third person or another party.

Guiness Import Co. v. Mark VII Distributors, Inc., 153 F.3d 607, 614 (8th Cir. 1998) (internal citations omitted); see also Dever v. Hentzen Coatings Inc., 380 F.3d 1070, 1073-74 (8th Cir. 2004). These considerations have resulted in a framework consisting of the following components: "(1) the nature and quality of contacts with the forum state; (2) the quantity of these contacts; (3) the relationship between the contacts and the cause of action; (4) the interest of the forum state; and (5) the convenience of the parties." Wines v. Lake Havasu Boat Mfg., 846 F.2d40, 42 (8th Cir. 1988). The first three factors are of primary importance. E.g., Austad Co. v. Pennie & Edmonds, 823 F.2d 223, 226 (8th Cir. 1987). Ultimately, "[t]he existence of personal jurisdiction . . . depends upon . . . a sufficient connection between the defendant and the forum State to make it fair to require defense of the action in the forum." Kulko v. Superior Court of Cal., 436 U.S. 84, 91 (1978); see also World-Wide Volkswagon Corpo. v. Woodson, 444 U.S. 286, 295 (1980)).

Miller's argument essentially boils down to this: virtually all of its contacts with Missouri took the form of letters and e-mails initiated in London and sent to Missouri. This is significant because, in its view, letters and e-mails are to be totally ignored in evaluating minimum contacts. Such broad statements appear in reported decisions; for instance, in 2002 the Eighth Circuit stated "[c]ontact by phone or mail is insufficient to justify exercise of personal jurisdiction under the due process clause." Porter v. Berall, 293 F.3d 1073, 1076 (8th Cir. 2002). Despite this seemingly-conclusive statement, the Eighth Circuit has never ignored contacts by phone or mail in the manner Miller now

---

(quoting Porter v. Berrall, 293 F.3d 1073, 1075 (8th Cir. 2002)); see also Bell Paper Box, Inc. v. U.S. Kids, Inc., 22 F.3d 816, 818 (8th Cir. 1994).

advocates.  In <u>Porter</u>, the Court of Appeals seemed to back away from this statement, suggesting the true impediment was the lack of contacts other than phone calls and letters.[3]  Later, in <u>Johnson v. Woodcock</u>, the Court of Appeals cited <u>Porter</u> and concluded "[t]he *occasional correspondences* between Johnson and Woodcock similarly do not support jurisdiction."  444 F.3d 953, 957 (8th Cir. 2006) (emphasis supplied).

Even if this backdrop is somewhat unclear, the Eighth Circuit's most recent discussion in <u>K-V Pharmaceutical</u> clarifies the issue.  There, the Court of Appeals cited <u>Burger King Corp.</u> in holding that in a contractual setting it is appropriate to consider prior negotiations, contemplated consequences, the contract's terms, and the parties' course of dealing – all in the context of evaluating "the real object of the business transaction" – to determine whether it is fair to subject a defendant to jurisdiction in the forum.  <u>K-V Pharmaceutical Co. v. J. Uriach & CIA, S.A.</u>, No. 10-3403, slip op. at 5 (8th Cir. Aug. 3, 2011).  The Court of Appeals then listed a series of factors in bullet-point fashion, most of which described letters and other communications directed into Missouri.  The mere existence of "[l]etters, emails and telephone calls to KV" was the very first factor.  The second factor noted the number and duration of communications, leading to "the conclusion that the parties had significant contacts over the life of the contract."  The fourth factor consisted of requests for action or information from the defendant to the Missouri-based plaintiff.  <u>Id</u>. at 6-7.[4]

---

[3]It could be argued that the <u>Porter</u> court's single statement was not meant to be interpreted so rigidly, given that the Eight Circuit has previously held that physical contacts that are "admittedly slight" may support jurisdiction because "the minimum contacts required by due process need not include physical presence at all.  The Supreme Court instructs that '[j]urisdiction . . . may not be avoided merely because the defendant did not *physically* enter the forum State.'" <u>Bell Paper</u>, 22 F.3d at 820 (quoting <u>Burger King Corp.</u>, 471 U.S. at 476).

[4]While the contract in <u>K-V Pharmaceutical</u> also required payments and products to be sent from the foreign defendant into the forum, this is not the sole basis for the court's holding.  If it were, there would have been no need for the court to discuss the phone calls and letters; the court could have simply relied on the contract's requirements as the basis for jurisdiction.

The Court holds that letters, e-mails, and phone calls are relevant in ascertaining whether a foreign defendant has the necessary minimum contacts to satisfy the Due Process Clause.[5]  This holding is consistent with Supreme Court precedent as well the majority of (and the most recent) decisions of the Eighth Circuit.

Turning to the case at bar, the Record reflects a relationship stretching over three years, during which Miller directed communications of various sorts into Missouri. Some of those communications requested information from Plaintiff in Missouri.  Miller's role in the relationship was as an agent or intermediary charged with the task of procuring insurance for a Missouri business, pursuant to the instructions and terms set by that Missouri business.  On two occasions, Miller sent representatives to Missouri to meet with Plaintiff's representatives.  While these meetings did not relate specifically to the breach alleged by Plaintiff, they do relate to the relationship between the parties and are relevant to the fairness inquiry.  Ultimately, the Court concludes the first three factors from Wines demonstrate it is reasonable and fair for Miller to defend a claim in Missouri.

The last two factors (which, as noted earlier, are less important) are, at worst, inconclusive.  Missouri's only interest in providing a forum is that Plaintiff's principal place of business is in Missouri.  In any event, the Court cannot say Missouri has no interest in providing a forum.  Finally, with respect to inconvenience, the Court concludes Missouri is just as inconvenient for Miller as London is for Plaintiff. Ultimately, however, for more than three years Miller (1) communicated with, (2) provided services to, (3) did business with, (4) requested information from, (5) took, and acted on instructions, from, and (5) accepted payment from a Missouri business – so its claims of inconvenience strike the Court as somewhat contrived.

---

[5]This conclusion is completely consistent with reality, given that technological advances have eliminated the need or desirability for people to travel great distances to negotiate contracts and conduct business.

## III.  CONCLUSION

For these reasons, Miller Insurance Services, Ltd.'s Motion to Dismiss is denied.

IT IS SO ORDERED.

/s/ Ortrie D. Smith
ORTRIE D. SMITH, SENIOR JUDGE
DATE: August 16, 2011                          UNITED STATES DISTRICT COURT