IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | |
|---|---|
| BARTLETT GRAIN COMPANY, L.P., ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Case No. 11-0509-CV-W-ODS |
| ) | |
| AMERICAN INTERNATIONAL GROUP, ) | |
| et al., ) | |
| ) | |
| Defendants. ) | |

**<u>ORDER AND OPINION GRANTING DEFENDANT AMERICAN INTERNATIONAL
GROUP, INC.'S MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION</u>**

Pending is American International Group, Inc.'s ("AIG") Motion to Dismiss for lack of jurisdiction. The motion (Doc. # 46) is granted and AIG is dismissed without prejudice.

<u>I. BACKGROUND</u>

Plaintiff is a Missouri Limited Partnership with its principal place of business in Kansas City, Missouri. AIG is a Delaware corporation with its principal place of business in New York.

Plaintiff's business involves selling grain to customers, who often require provision of trade credit to obtain the grain. Plaintiff also purchases insurance to protect against the risk that the trade credit will not be repaid; in this case, it obtained that coverage from co-defendant Chartis Insurance UK, Limited ("Chartis"). In 2008, Plaintiff entered a credit agreement with several buyers whereby Plaintiff extended $17 million of trade credit, resulting in Plaintiff's delivery of grain to those entities. This credit extension was covered by the insurance agreement with Chartis. In the Spring of 2009, the buyers advised Plaintiff that they might lack the ability to continue operating, thus undermining their ability to repay the credit. Concerned that a default would occur if a

capital infusion was not made, Plaintiff agreed to loan the buyers $6 million.  However, Plaintiff allegedly arranged for Chartis to agree that in the event of the buyers' default, the $6 million loan would have priority in any payment or application of collateral.  The existence of, and performance on, this agreement is the subject of this suit.

Missing, however, is much explanation as to how AIG is connected to this case.  AIG is not a party to the agreement between Chartis and Plaintiff.  AIG states (and Plaintiffs do not dispute) that it is a holding company that
- holds a subsidiary (AUIH) that
- holds another subsidiary (Chartis, Inc.) that
- holds another subsidiary (Chartis US, Inc.) that
- holds a subsidiary (Chartis Overseas Association)[1] that is the majority beneficial owner of
- Chartis UK Holdings Limited, which
- holds another subsidiary (Chartis UK Financing Limited) that
- holds another subsidiary (Chartis UK Sub Holdings Limited), that
- owns Chartis – the Defendant in this case – as a subsidiary.

None of the companies between AIG and Chartis are named as defendants.

The Amended Complaint alleges that all policy information was transmitted to both AIG and Chartis for review.  AC, ¶¶ 30-31.  Thereafter, the Amended Complaint refers to AIG and Chartis collectively as the "Defendant Insurers" and attributes all actions to the duo without differentiating between AIG and Chartis.

## II.  DISCUSSION

There are two broad categories of personal jurisdiction.  "Specific jurisdiction refers to jurisdiction over causes of action that 'arise out of' or 'relate to' a defendant's activities within a state."  Lakin v. Prudential Securities, Inc., 348 F.3d 704, 707 (8th Cir.

---

[1] The members of Chartis Overseas Association are also owned (directly or indirectly) by Chartis Inc.

2003) (citing <u>Burger King Corp. v. Rudzewicz</u>, 471 U.S. 462, 472 (1985)). "General jurisdiction, on the other hand, refers to the power of a state to adjudicate any cause of action involving a particular defendant, regardless of where the cause of action arose." <u>Id</u>. (quotation omitted).

General jurisdiction does not require a showing that the defendant in question performed any of the activities described in Missouri's long-arm statute. The Missouri Supreme Court has rejected the argument "that Missouri's long-arm statute is the exclusive means of obtaining jurisdiction over a foreign corporation," and explained that the statute is "intended to expand the reach of the law of the state to authorize jurisdiction over foreign corporations that are not necessarily authorized to do business in the state but whose activities justify personal jurisdiction." <u>State ex rel. K-Mart Corp. v. Holliger</u>, 986 S.W.2d 165, 168 (Mo. 1999) (en banc). However, even before the long-arm statute existed, "a foreign corporation present and conducting substantial business in Missouri was subject to the jurisdiction of [Missouri] courts." <u>Id</u>. at 167. The Eighth Circuit has relied on <u>Holliger</u> to hold that Missouri courts would recognize general jurisdiction and, when it is applied, the cause of action need not arise from any of the acts described in the long-arm statute. <u>Lakin</u>, 348 F.3d at 707-08 & n. 5. Specific jurisdiction is proper "if the injury giving rise to the lawsuit occurred within or had some connection to the forum state, meaning that the defendant purposely directed its activities at the forum state and the claim arose out of or relates to those activities." <u>Steinbuch v. Cutler</u>, 518 F.3d 580, 586 (8th Cir.), <u>cert. denied</u>, 518 F.3d 580 (2008) (citing <u>Burger King Corp.</u>, 471 U.S. at 472)).

Specific jurisdiction is proper "if the injury giving rise to the lawsuit occurred within or had some connection to the forum state, meaning that the defendant purposely directed its activities at the forum state and the claim arose out of or relates to those activities." <u>Steinbuch v. Cutler</u>, 518 F.3d 580, 586 (8th Cir. 2008) (citing <u>Burger King Corp.</u>, 471 U.S. at 472)). The Constitutional analysis[2] requires the Court to consider

---

[2]Missouri's long-arm statute "'authorizes the exercise of jurisdiction over non-residents to the extent permissible under the due process clause, [so] we turn immediately to the question whether the assertion of personal jurisdiction would violate

> [t]he nonresident defendant's conduct and connection with the forum state [and whether it] should reasonably anticipate being haled into court there, and it is essential that there be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws. Purposeful availment means that the defendant's contacts with the forum state must not be random, fortuitous, attenuated, or the result of unilateral activity of a third person or another party.

Guiness Import Co. v. Mark VII Distributors, Inc., 153 F.3d 607, 614 (8th Cir. 1998) (internal citations omitted); see also Dever v. Hentzen Coatings Inc., 380 F.3d 1070, 1073-74 (8th Cir. 2004).

These considerations have resulted in a framework consisting of the following components: "(1) the nature and quality of contacts with the forum state; (2) the quantity of these contacts; (3) the relationship between the contacts and the cause of action; (4) the interest of the forum state; and (5) the convenience of the parties." Wines v. Lake Havasu Boat Mfg., 846 F.2d40, 42 (8th Cir. 1988). The third of these factors is the only distinguishing feature between general and specific jurisdiction: a significant relationship between the defendant's contacts and the cause of action reduces the need for a strong showing of the other factors, and an insignificant (or absent) relationship elevates the need for a strong showing of the other factors. Cf. Wells Dairy, Inc. v. Food Movers Int'l, Inc., 607 F.3d 515, 518 (8th Cir. 2010) (citing Bell Paper, 22 F.3d at 819). The first three factors are of primary importance. E.g., Austad Co. v. Pennie & Edmonds, 823 F.2d 223, 226 (8th Cir. 1987). Ultimately, "[t]he existence of personal jurisdiction . . . depends upon . . . a sufficient connection between the defendant and the forum State to make it fair to require defense of the action in the forum." Kulko v. Superior Court of Cal., 436 U.S. 84, 91 (1978); see also World-Wide Volkswagon Corp. v. Woodson, 444 U.S. 286, 295 (1980)).

---

the due process clause.'" Romak USA, Inc. v. Rich, 384 F.3d 979, 984 (8th Cir. 2004) (quoting Porter v. Berrall, 293 F.3d 1073, 1075 (8th Cir. 2002)); see also Bell Paper Box, Inc. v. U.S. Kids, Inc., 22 F.3d 816, 818 (8th Cir. 1994).

4

The Court will first address specific jurisdiction by noting Plaintiff does not seem to suggest it exists. There is no allegation or argument suggesting AIG directed any contact into Missouri related to Plaintiff's insurance coverage. Plaintiff does not even allege AIG is a party to the contract between Plaintiff and Chartis, and the contract itself suggests it is not.

This leaves, then, Plaintiff's argument that general jurisdiction exists. Most of Plaintiff's arguments relate to the ownership relationship (distant though it may be) between Chartis and AIG. However, before this relationship can be a factor favoring the exercise of jurisdiction, "the plaintiff must show that the parent dominates and controls the subsidiary; mere ownership of subsidiary is insufficient to justify personal jurisdiction. Whether a subsidiary is subject to personal jurisdiction in the state has no effect on the jurisdictional inquiry regarding its parent." Steinbuch, 518 F.3d at 589; see also Epps v. Stewart Information Services Corp., 327 F.3d 642, 648-49 (8th Cir. 2003); Clune v. Alimak AB, 233 F.3d 538, 546 (8th Cir. 2000), cert. denied, 533 U.S. 929 (2001). Plaintiff's obligation is higher (or more important) in this case given the many layers of corporations and other entities between AIG and Chartis. Plaintiff's reliance on the allegations of the Amended Complaint are insufficient: most allegations cannot fairly be said to apply to AIG specifically, and the bare allegation that the policy's endorsements and amendments were "transmitt[ed] to Defendants AIG and Chartis for their review, comment and approval," AC ¶ 30, is a slender reed upon which to rest jurisdiction for a company (1) as removed as AIG is from Chartis (2) that is not a party to the contract.

Plaintiff also suggests AIG has other activity of sufficient significance to subject it to jurisdiction in this state. The Court disagrees. Information gleaned from AIG's website is not specific to AIG; the information describes the activities of AIG by attributing the activities of its direct and indirect subsidiaries, but this attribution of a connection or responsibility does not constitute contact by AIG with those places where its subsidiaries do business. Plaintiff also points to lawsuits filed in Missouri, ostensibly by AIG, to support its contention that AIG uses courts in Missouri so it can fairly be haled into them as a defendant. The Court is not convinced that these were suits

initiated by AIG as opposed to one or more of its many separate sub-entities, so they do not constitute purposeful availment of the forum's benefits.  Moreover, these contacts are insufficient to satisfy Due Process.

As large and as "multinational" as AIG's operations may be, AIG itself does not appear to do business in Missouri.  It owns companies that undoubtedly do – but this does not subject AIG to jurisdiction.  The Amended Complaint treats AIG and Chartis interchangeably without differentiating between the actions of either, and thereby attempts to impute all actions to both.  In this way, the Amended Complaint fails to allege any basis for holding that the Due Process Clause permits a suit against AIG to proceed.

### III.  CONCLUSION

AIG's Motion to Dismiss is granted because the Court concludes personal jurisdiction is lacking.  No opinion is expressed with respect to AIG's alternative argument that service was improper.  Plaintiff's claims against AIG are dismissed without prejudice.

IT IS SO ORDERED.

DATE: August 24, 2011

/s/ Ortrie D. Smith
ORTRIE D. SMITH, SENIOR JUDGE
UNITED STATES DISTRICT COURT